United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 05-0673 JSW (JL) |
| Plaintiff, | ORDER GRANTING AND DENYING DEFENDANT'S MOTION TO MODIFY CONDITIONS OF PRETRIAL CONFINEMENT |
| v. | |
| TODD SARVER, | |
| Defendants. / | |

**SUMMARY AND CONCLUSION**

Defendant Todd Burton Sarver, represented by Federal Public Defender Daniel Blank, filed a motion to modify his conditions of pretrial confinement to order the detention facility to add the anti-anxiety prescription drug Klonopin to his treatment regimen. On August 21 and 25, 2006, the Court conducted an evidentiary hearing, with testimony from Defendant's expert Dr. Pablo Stewart and the Government's treating psychiatrist Dr. Stephen Heisler. The Government is represented by Assistant United States Attorney, Robert Rees. The parties presented their closing statements on August 31, 2006.

Since filing this motion, Defendant has entered a plea of guilty to the charge of bank robbery and is scheduled for sentencing on January 11, 2007. In essence, the motion is a request to modify the defendant's medication for the period between his plea of guilty and sentencing.

1       The Court applies a modified standard of deliberate indifference in this proceeding.
2  Defendant cites the Fifth and Eighth amendments to the Constitution as grounds for the
3  motion.  Obviously, the matter of prescribing medication for an incarcerated person,
4  whether it be pre-trial or post-conviction, is addressed to the sound discretion of the
5  treating doctors and administrators of the facility.  The Court is neither inclined nor
6  equipped to second guess a treating doctor's treatment plan in the absence of clear
7  evidence of an abuse of discretion or deliberate indifference to the needs of the patient-
8  prisoner.

9       In the instant case, the Court finds that both Drs. Stewart and Heisler testified with
10 substantial credibility.  Each is highly qualified in the field of psychiatry.  Defendant's
11 contention that Dr. Heisler spent insufficient time reviewing Defendant's voluminous
12 medical records and met with him only sporadically and for brief periods, are belied by his
13 testimony, which clearly indicates Dr. Heisler's deep concern for Sarver's welfare, his
14 history and pathology, and the addictive characteristics of the requested drug Klonopin.

15      The Court incidentally notes that in some cases a highly disturbed but intelligent
16 patient may develop some expertise in his own treatment, but his personal views regarding
17 the appropriate combination of medications, while entitled to some consideration, certainly
18 do not control the judicial disposition of the matter.

19      The Court finds a classic difference of medical opinion in this case.  (See, *Toguchi v.*
20 *Chung*, infra.)  Each doctor presents a sound basis and analysis for his conclusion, based
21 on knowledge of the patient-defendant and review of his records, in light of the current
22 state of medical knowledge regarding treatment of individuals presenting Mr. Sarver's
23 constellation of symptoms.  The Court also concludes that any further steps to address this
24 problem should require some form of meet-and-confer process between Drs. Stewart and
25 Heisler.

26      Accordingly, Defendant's motion is Granted to the extent that the respective Doctors
27 are ordered to confer at least by telephone with respect to the matter of whether Klonopin
28

should be added to Mr. Sarver's medication regimen at this time, but the motion is Denied insofar as it seeks this Court to order the prescription of Klonopin.

## PROCEDURAL BACKGROUND

This matter is assigned to the Honorable Jeffrey S. White for trial or disposition. A competency evaluation of Defendant was conducted on January 9, 2006 by Dr. Pablo Stewart. After counsel observed Mr. Sarver's condition to deteriorate, on March 30, 2006 he filed an unopposed motion, based upon a letter from Dr. Stewart, to modify Defendant's treatment regimen to include Klonopin.

On April 7, 2006, BOP regional counsel Penn contradicted Dr. Stewart's recommendation, and the court denied the motion. On May 11, counsel for Defendant questioned the statements of BOP counsel and at the direction of the court submitted a supplemental letter from Dr. Stewart reiterating his "extremely firm recommendation" that Klonopin be prescribed. On May 16, the court issued an order to show cause.

On May 26, counsel for the BOP submitted another letter, and the court discharged the OSC on May 30, 2006. On June 8, defense counsel again raised the matter with Judge White, who directed that any motions to modify conditions under the Bail Reform Act be presented in this Court.

As stated above, pending resolution of this motion, Defendant entered a conditional plea of guilty but remains to be sentenced.

## FACTUAL BACKGROUND

Mr. Sarver presents a long history of psychiatric illness. He has been institutionalized on and off since he was a child. As an adult, when not in prison, he has subsisted on SSI. In 1991 he was convicted of bank robbery and sentenced to 96 months in custody followed by a period of supervised release. In 1999 he was again convicted of bank robbery and again sentenced to 96 months with a term of supervised release.

Most recently he was released on September 12, 2005. On October 13, 2005, he committed another bank robbery, to which he has now pled guilty.

While deemed to be competent to stand trial, Mr. Sarver has been diagnosed with a psychotic disorder with a history of drug dependency. Over the years he has been treated with numerous medications.

Klonopin was first prescribed in January 1992 by Dr. John Peterson at FDC Dublin. Sarver's medical records indicate that he was continued on this medication while in prison at FCI Phoenix and FCI Florence. He was apparently taken off anti-anxiety medication in 1997, and it was not resumed after his release from custody in March 1998.

After returning to federal custody on new bank robbery charges in 1999, Klonopin was once again prescribed by various doctors in May, June, and July 1999 through the end of his pre-trial custody in the spring of 2001.

Upon receipt at FMC Rochester on May 25, 2001, the psychiatric staff noted Mr. Sarver's treatment with various psychotropic medications, including Klonopin, and at first kept him on it. In September 2002, after experiencing severe anxiety attacks, he was taken off Klonopin. In May 2004 he was placed on psychiatric alert and was transferred to FMC Lexington, where on October 26, 2004 he seriously injured himself, but Klonopin was not prescribed.

Finally, Mr. Sarver was transferred to FMC Springfield, after being placed on suicide watch in 2005. Lorazepam, which is similar to Klonopin, was prescribed. He was taken off it on July 20, 2005 and was released to a halfway house on September 12, without any anti-anxiety medication.

Shortly thereafter he was arrested again and brought before this court. After he again attempted to injure himself, he was transferred to FDC Dublin, and Klonopin was resumed. Subsequently it was discontinued.

**TESTIMONY OF DOCTORS STEWART AND HEISLER**

Dr. Pablo Stewart, Defendant's expert, is a board-certified psychiatrist, Associate Professor of Psychiatry at the University of California at San Francisco, and has served in a forensic capacity with the City and County of San Francisco Drug and Alcohol Units. He has also served as a consultant to the Department of Justice, Civil Rights Division.

1	Dr. Stewart examined Mr. Sarver over a period of several hours and reviewed his
2 psychiatric records from kindergarten through the Bureau of Prisons in the 1990's.  Dr.
3 Stewart concluded that Mr. Sarver suffers from a chronic psychotic disorder, possibly
4 schizophrenia, plus obsessive compulsive disorder, and drug and alcohol addiction.

5	Turning to Mr. Sarver's condition in March, 2006, Dr. Stewart found him in a state of
6 extreme anxiety - - "off the scale", very depressed and suicidal.  The doctor opined that a
7 combination of prescription drugs would be most appropriate to address Mr. Sarver's
8 problems - - anti- depression, anti-psychotic, anti-anxiety.  Leaving out an effective anti-
9 anxiety medication, such as a benzodiazepine, caused the other drugs to be over-
10 stimulating, exacerbating Mr. Sarver's anxiety.

11	Dr. Stewart noted, based upon his review of the records, that Mr. Sarver had been
12 successfully treated with Klonopin on several occasions while he was in custody,
13 commencing in March 1992, 1994, and 1997.  He noted that Mr. Sarver re-offended in
14 1999 while he was not taking Klonopin.  Klonopin was reinstated in 1999.  When Mr. Sarver
15 was taken off it, his condition deteriorated.  In the year 2000 he resumed the medication.

16	Dr. Stewart referred to numerous exhibits including Exhibit C to defense counsel's
17 declaration in support of the motion - - and Exhibits A, B, C, F, G, H, and E - - which traced
18 Mr. Sarver's treatment with Klonopin commencing in March, 2000 through the end of May
19 2001.

20	Dr. Stewart found that the defendant did not abuse Klonopin.  When he was able to
21 self-prescribe the dosage, he did not tend to increase his intake or his demand for more of
22 the drug.  Results of physical examinations did not show any elevated scales indicating
23 toxic levels.  In general, Dr. Stewart concluded that Klonopin was effective in dealing with
24 Mr. Sarver's anxiety, when it was prescribed.  And his condition rapidly deteriorated,
25 complete with suicidal imposes and self-injury, when he was off it.

26	On cross examination Dr. Stewart acknowledged the increasing use of SSRI's for
27 treatment of conditions such as Mr. Sarver's.  He noted in Government Exhibits 1, 2, and 3
28 that certain institutional personnel had expressed concern about Mr. Sarver becoming

1  addicted to Klonopin, demanding more of it, and, in general, his profound drug
2  dependence.  Dr. Stewart attempted to distinguish between drug dependence, which
3  Klonopin could cause, and addiction, which causes criminal behavior.  In conclusion, Dr.
4  Stewart reiterated his opinion that what is most important in dispensing medication is what
5  works, and the treatment record of Mr. Sarver indicated that Klonopin was most effective in
6  controlling his anxiety.

7  Dr. Stephen Heisler, Mr. Sarver's treating psychiatrist and the Government's expert,
8  is also a Board certified Psychiatrist.  He has been practicing for more than 35 years and
9  has worked in a variety of settings.  At present, he is in private practice and contracts and
10  provides psychiatric services to FDC Dublin since 1997.

11  Dr. Heisler has seen Mr. Sarver as a patient off and on for more than 10 years,
12  including when he was incarcerated at Dublin in early 2000.  Most recently, Dr. Heisler has
13  seen Mr. Sarver as a patient since his re-incarceration at Dublin in November 2005.  He is
14  the primary care giver for Mr. Sarver's psychiatric problems, although his recommendations
15  regarding medications are subject to review by the medical director of the institution.

16  Currently Dr. Heisler diagnoses Mr. Sarver with generalized anxiety disorder, a
17  history of multiple drug abuse and borderline personality disorder.  He notes in his
18  declaration in opposition to the defendant's motion, that Mr. Sarver has "pressed
19  continuously" for Klonopin to deal with his anxiety.  Dr. Heisler stated that Mr. Sarver is
20  impulsive and manifests poor judgement.  He attempts to control his situation by self-harm
21  and suicidal behavior.  In the past he has abused his medications.  He has shown
22  improvement in more structured situations.

23  Dr. Heisler testified that medication is not a cure.  There is no clear regimen for
24  treating borderline personality.  A consistent structure with therapy and medication works
25  best. Drugs merely deal with symptoms, which shift from time to time.

26

27  The witness noted that SSRI's are recommended currently for Mr. Sarver's

28

conditions. They are not addictive medically. Examples are Prozac, Zoloft and Paxil. He has prescribed Paxil and Vistaril currently for Mr. Sarver. Vistaril is a sedating drug and anti-histamine and minor tranquilizer. It is not physically addicting. Mr. Sarver has essentially refused to follow Dr. Heisler recommended course, taking Vistaril sporadically, but not Paxil.

Klonopin is an anti-anxiety drug, generally used to control seizures and panic attacks. Its side effects include sedation, dizziness, addiction, and liver damage.

Dr. Heisler tracked his contacts with and treatment of Mr. Sarver commencing in the early 1990s, referring to Government Exhibits 5 through 19. In 1999 and 2000 he was prescribed Klonopin with Paxil. In December 2000 Sarver was taken off Klonopin, and Risperdal was prescribed with Paxil.

Government Exhibits 14, 15, and 16 reflect the opinions of various treating doctors that Mr. Sarver was "very manipulative" in 1994 and "anxious, argumentative, and irritable" when he was taken off Klonopin in 2001. At that time the Chief of Psychiatry at FMC Rochester stated that "long-term use of Klonopin is inadvisable." Nevertheless, Klonopin was resumed in 2002 for some time.

In 2005 Dr. Heisler resumed his treatment of Mr. Sarver, recommending an SSRI and Vistaril. As noted above, the defendant refused his recommendations. In general Dr. Heisler opined that Klonopin is not a good choice now in light of Mr. Sarver's problems with addiction and certain physical symptoms, including elevated triglicerides. Dr. Heisler stated it would be better to try what he recommends and deal with Mr. Sarver's anxiety in other ways. Klonopin is not an unreasonable choice, but is not recommended at present. It may become appropriate in the future.

On cross examination Dr. Heisler made clear that he is busy with many patients and had not reviewed all of Mr. Sarver's voluminous records, but he demonstrated command over a substantial portion of them. He stated that the BOP records do not indicate that Mr. Sarver necessarily did better on Klonopin and worse without it. Other factors could explain

his recurrent episodes of anxiety. Dr. Heisler stated that not all of the past information

about Mr. Sarver is relevant today. His present circumstances are different. Dr. Heisler stated that Mr. Sarver is prone to Klonopin addiction and he has constantly pressed for it. Klonopin is Mr. Sarver's panacea.

In the year 2000, the defendant's condition was more severe, and Klonopin was appropriate. Now, Dr. Heisler says, Mr. Sarver is not doing badly. Accordingly, Vistaril would be more appropriate to try. In general, the possibility of addiction is the defendant's number one problem. He has a history of abusing all sorts of drugs. He is probably dependant on Klonopin. He should try something else.

The Court received in evidence Defendant's Exhibits A through O and the Government's Exhibits 1 through 19. The reports and declarations of Drs. Stewart and Heisler were also considered by the Court, as well as Exhibits A through W attached to defense counsel's declaration in support of the motion.

## LEGAL AUTHORITY AND ANALYSIS

Defendant fails to cite any case directly on point. Several decisions authorize courts to monitor and modify conditions of confinement in light of the due process clause. The Supreme Court has stated that the due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner." In this case, Mr. Sarver is essentially a convicted prisoner although he is not yet sentenced.

However, this Court's decision does not rest on any distinctions between the standard of review applicable to due process or eighth amendment claims or pre- or post-conviction status. The cases defense counsel cites elucidate the factors which are appropriate to consider. To constitute a due process violation, the claimed harm must "significantly exceed, or be independent of, the inherent discomfort of confinement. "*Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004).

Several cases deal with differences of medical opinion, albeit in a different context. The Government cites *Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004). In that case the Ninth Circuit reviewed a district court grant of summary judgment for the defendant under the "deliberate indifference" standard of Title 42 U.S.C. § 1983. In that case the plaintiffs argued that a particular drug, Seroquel, was superior to Triafon, which was prescribed by

Dr. Chung. The court held that a mere difference of medical opinion . . . . . [is] insufficient, as a matter of law, to establish deliberate indifference", citing *Jackson v. McIntosh*, 95 F.3d 330, 332 (9th Cir. 1996). *Toguchi* at page 1058.

The court in *Toguchi* reasoned as follows: "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health."

As pointed out by the Government, the Supreme Court has held that deliberate indifference to an inmate's serious medical needs violates the Eight Amendment. [citations omitted]. In order to establish a constitutional violation, the complainant must "satisfy both the objective and subjective components of a two-part test." [citations omitted]. First the prison official must have "deprived the prisoner of the 'minimal civilized measure of life's necessities.' " [citation omitted]. Second, the prisoner must show that officials acted with 'deliberate indifference' in doing so." [citation omitted] Such indifference amounts to denial, delay, or intentional interference with medical treatment. An Eighth Amendment violation must also involve unnecessary and wanton infliction of pain." (Government's Opposition memo at page 6.)

Elsewhere the Supreme Court has counseled deference to the informed discretion of prison administrators. *Bell v. Wolfish*, 441 U.S. 5 20, 548 n.29 (1979). See also *United States v. Howard*, 429 F.3d 843, 851 (1992).

Again, in the context of a civil rights action, a district court has addressed the issue as follows:

> "Deliberate indifference to an inmate's serious medical needs may be manifested in two ways: either when prison officials deny, delay or intentionally interfere with medical treatment, or by the way that prison physicians provide medical care. [Citations omitted.] In either case, the indifference to the inmate's medical needs must be substantial; inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel does not rise to

the level of a constitutional violation." [citation omitted.] *Dennis v. Thurman*, 959 F. Supp. 1253, (C.D. Cal. 1997).

Mr. Sarver has not been deprived of necessary medical care. In fact, the opposite is true. He has been extensively treated over many years. For the past 10 years he has been under the care of Dr. Heisler off and on. Dr. Heisler is familiar with his history and his current condition. He is also up to date with respect to appropriate treatment modalities for Mr. Sarver's conditions.

In this case, defense counsel seeks to have the Court prescribe a particular medication for Mr. Sarver's anxiety citing Dr. Stewart's opinion. The conflict in the testimony between Dr. Stewart and Dr. Heisler amounts to a difference of medical opinion, each based on a reasonable assessment of Mr. Sarver's needs and the current state of the medical art. Upon examination, Dr. Heisler's opinion does not appear to be arbitrary. He has sufficiently reviewed the records and spent enough time with Mr. Sarver. Nor does he appear to be callous or indifferent to Mr. Sarver's condition. Quite to the contrary, Dr. Heisler expressed a great deal of concern for Mr. Sarver, and his current prescriptions for Mr. Sarver, including Vistaril, takes into account Mr. Sarver's need for a stable structure, therapy, and non-addictive medication - - recognizing that medication in itself will not treat Mr. Sarver's underlying condition by itself.

After listening to the testimony of both doctors and reviewing the voluminous records supplied by both parties, the Court can only conclude that if these experts were merely afforded the time and opportunity to confer in a medical context regarding Mr. Sarver's condition and treatment, they would probably agree. At least they would not disagree, each with the other. Accordingly, this Court feels that this is not the type of situation in which a court - - uneducated in the diagnosis and treatment of psychiatric conditions - - should tread, in the absence of a lack of process, denial of treatment altogether, or other arbitrary conduct.

1  Accordingly, the Court highly **recommends** that the doctors confer and attempt to
2 reach a resolution of this problem.  The Court declines to prescribe a particular medication,
3 based upon this record.

DATED: September 18, 2006

_____
JAMES LARSON
Chief Magistrate Judge